UTICA,
Aug. 1326.

Gould
v.
James.

Gould *against* James.

On error from *Queens* county C. P. The action in the court below was trespass, by *Gould* against *James*, for entering the close of the former at *Lloyd's Neck*, in the town of *Oyster Bay*, *Queens* county, and catching, taking and carrying away oysters. Plea, that the *locus in quo* was, at the time when, &c. a navigable river, or arm of the sea; and a free fishery for any of the citizens of this state. The replication took issue on this fact.

At the trial, (*Nov. 30th*, 1822,) the plaintiff claimed the *locus in quo*, as belonging in fee simple to inhabitants of *Lloyd's Neck;* and proved that the plaintiff held exclusive possession of a farm under a lease from a tenant joining the *locus in quo*, at *Lloyd's Neck*, was offered as a witness for the that he was admissible.

*The inhabitants of Lloyd's Neck claimed by prescription, an exclusive right of fishing for oysters. opposite their respective farms in an arm of the sea. In an action of trespass. by one of them, for a violation of this claim, another, interested as a remainder man in a farm adjoining; held,*

The inhabitants of H. claimed that the *locus in quo* was a free fishery for them. The defendant, however, an inhabitant of H, justified by plea, on the ground that it was a free fishery for all the citizens of this state. *Held*, that other inhabitants of H. were competent witnesses; and that too, though they had fished at *Lloyd's Neck;* and were liable to an action, if the plaintiff should succeed in establishing his right.

These witnesses had an interest in the question merely; not in the event of the cause.

A commoner cannot be a witness to support the right of his fellow commoner; but one may be a witness to support a right by prescription, in respect to another's estate, though the witness claim to prescribe in respect to his own estate, upon the same facts he is called to establish.

One may prescribe for an exclusive right of fishery in an arm of the sea, where the tide ebbs and flows. But such prescription must be clearly proved. Every presumption is against it.

A citizen of this state is a competent witness to establish a public right of fishery in all the citizens of the state.

An award of arbitrators, was made between the owner of lands called L., adjoining to and bounded on an arm of the sea, where the tide ebbs and flows, on one part; and the trustees of the town of H. in this state, lying on the opposite side of the arm, of the other part; which award established certain boundaries between the parties, and decided that certain fishing ground lay within the boundaries of L. In trespass by the lessee of a part of the fishing ground, who claimed a right of several fishery therein by prescription, against an inhabitant of H., for taking fish on the demised premises; the latter justifying on the ground that the fishery was free to any citizen of this state; the plaintiff offered the award in evidence. *Held*, that it should not be received; that it determined nothing as to the rights claimed by the respective parties; and was therefore immaterial.

An inhabitant of a particular place, cannot be a witness, to prove a prescriptive right, common to all the inhabitants of that place.

A several fishery, in an arm of the sea, where the tide ebbs and flows, may be derived from a grant or prescription.

In trespass *quare clausum fregit*, against one, other trespassers on the *locus in quo*, or in other places, the title to which depends on the same question as that to the *locus in quo*, may be witnesses for the defendant; for the verdict will not be evidence for or against them.

by the curtesy, in which the plaintiff covenanted to pro-
tect the shell-fish on the premises.   That the farm was on
*Lloyd's Neck*, and adjoining *Lloyd's Harbor*.   That the
fences on both sides extended from the upland to the mud
at or near low water mark.   That the flats between high
and low water mark abound with oysters; of which the
defendant, though forbidden by Mr. *Lloyd*, carried away
several bushels.   That the defendant said he would admit
the right to the oysters to be in the proprietors of the up-
land, if they would permit him to take them away.   It
was also proved that the right to the oysters had been
claimed by the proprietors of the upland at *Lloyd's Neck*,
as belonging exclusively to them, in front of their respect-
ive farms.   That people generally asked for them; and
those who did not, were commonly prosecuted.   This ex-
clusive right had been exercised, as one witness for the
plaintiff said, 13 years to his knowledge; and another said
38 years.

*John L. Cogswell*, who was entitled to a right in re-
mainder in a farm at *Lloyd's Neck*, adjoining the one pos-
sessed by the plaintiff, was called by the plaintiff as a wit-
ness.   The defendant objected to his admission on the
ground of interest.   He was rejected by the court below
as incompetent; and the plaintiff excepted.

The defendant offered 4 witnesses, citizens of this state,
and inhabitants of the town of *Huntington ;* which lies
on the west side of the neck opposite *Lloyd's Harbor*.
This harbor was proved to be 70 or 80 rods wide; and it
appeared that the shores on the west neck side, were
within the town of *Huntington ;* and free for all the in-
habitants of that town.   These witnesses had themselves
taken oysters at *Lloyd's Neck*.   They were objected to,
by the plaintiff, as interested; but were received by the
court below; and the plaintiff excepted.   They testified
as to the situation of the harbor, fences &c. and to inter-
ruptions of the right claimed by the proprietors on *Lloyd's
Neck* side.

The plaintiff then offered in evidence an award of arbi-
trators, made *May 30th*, 1784, upon a submission between

*Henry Lloyd*, then proprietor of *Lloyd's Neck*, and the trustees of the town of *Huntington*, by which certain boundaries were established, including the *locus in quo* in *Lloyd's Neck*. This was objected to, and being rejected by the court below, the plaintiff excepted.

UTICA,
Aug. 1826.

Gould
v.
James.

*W. T. M'Coun*, for the plaintiff in error. *Cogswell*, the plaintiff's witness, was improperly rejected. He was, at most, interested in the question, not in the event of the cause. (1 *T. R.* 302.) The record in this cause would be evidence neither for, nor against him. The prescription set up, and sought to be proved, is in the plaintiff and his reversioner, exclusive of all other persons. It is annexed to the *locus in quo*. It is not a prescription in favor of all the inhabitants of *Lloyd's Neck* in common. Hence, proof of a prescription in right of the plaintiff's close, can have no influence on the witness' claim. *Hockley* v. *Lamb*, (1 *Ld. Raym.* 731,) is in point. It is not the case of commoners, in which, I admit, a witness, being a fellow commoner himself, could not testify. (1 *T. R.* 302.)

The defendant's four witnesses ought to have been rejected as incompetent. They were inhabitants of *Huntington*, who claimed in common against the plaintiff. (1 *T. R.* 302. 1 *Ld. Raym.* 731. *Comp. of Carpenters*, &c. v. *Hayward, Dougl.* 374.) The verdict in this case, if for the plaintiff, would be evidence against these witnesses, as in *Reed* v. *Jackson*, (1 *East*, 355,) where the competency of a verdict against one parishioner, on the question of a common right of way for his parish, was received in evidence against another. Upon this principle, in trespass for fishing, against an inhabitant of *Staten Island*, an inhabitant of that place was holden an incompetent witness, to prove a common right of fishery in all the inhabitants. (*Jacobson* v. *Fountain*, 2 *John. Rep.* 170.)

The award offered in evidence was admissible. (15 *John.* 197. 1 *Cowen*, 117. 2 *Cowen*, 638. *Card* v. *Jeans, Mann. Dig. Witness, c.* (*k*) *Privies in estate, p.* 463.)

*R. Bogardus*, contra. The defendant was entitled to a verdict on the plaintiff's own proof. The *locus in quo* being an arm of the sea where the tide ebbs and flows, the right of fishing was common to all. (*Hooker* v *Cumming*, 20 *John.* 90, *and the cases there cited.*) If this be so, it is immaterial whether the witnesses, whose competency are in question, were received or not. Their testimony was offered with a view to the plaintiff's exclusive right; whereas, it is evident he could not have any. Neither the king nor the legislature can grant away a public fishery. (*Arnold* v. *Mundy*, 1 *Halst.* 1.)

But *Cogswell* was properly rejected. Being a remainderman of the farm adjoining the plaintiffs, the proprietors of which claimed the same exclusive right as the plaintiff and his lessor, he had a strong interest. Not so of the defendant's witnesses. They were not offered, as supposed on the other side, to establish a common right in a particular town, district, or corporation to which they belonged; but to prove a right in the people of the state at large. Surely, it will not be contended that every man in the state is disqualified to be a witness upon such a question. The doctrine of interest has never been extended so far. Neither *Reed* v. *Jackson*, nor *Jacobson* v. *Fountain*, advance such a sweeping doctrine. They relate to common rights of way or fishery in the inhabitants of particular places. In trespass for travelling on ground claimed as a public highway, was it ever heard that the whole state shall be shut out from being witnesses?

Nor was the award admissible. The defendant was not a party to it; nor did it relate at all to the subject now in controversy.

*M'Coun*, in reply. It is true, that where the tide ebbs and flows, the right of fishing is, *prima facie*, in the citizens of this state. But we introduced evidence to show an exclusive right in the inhabitants of *Lloyd's Neck.* The circumstance that the tide ebbs and flows, is not conclusive for the people. A prescriptive right may still exist in private persons. *Harg. Law Tracts*, (*part* 1, *ch.*

5, *p.* 17,) contains the whole doctrine on the subject. By this, it will be seen, that a subject may acquire an exclusive right of fishery in an arm of the sea, by grant from the king, by custom, or prescription. *Carter* v. *Murcot,* (4 *Burr.* 2162 *to* 2165, *and the cases there cited,*) contain the same doctrine. Several adjudications in this country have adopted the *English* doctrine. (*Adams* v. *Pease,* 1 *Conn. Rep. N. S.* 481. *Coolidge* v. *Williams,* 4 *Mass. Rep.* 140.) An exclusive right will be presumed, if it have been exercised for the length of time required by statute, to bar a right of entry. (*Ingraham* v. *Hutchinson,* 2 *Conn. Rep. N. S.* 584. *Shaw* v. *Crawford,* 10 *John. Rep.* 236. *Bealy* v. *Shaw,* 6 *East,* 208. *Balston* v. *Bensted,* 1 *Campb.* 463. *Chalker* v. *Dickenson,* 1 *Conn. Rep. N. S.* 582.) *Arnold* v. *Mundy,* it is true, denies the right of the king to grant; but admits a power in the legislature. That case does not at all interfere with prescriptive rights.

As to the defendant's witnesses, if all the citizens of the state are interested, it is not the plaintiff's fault; nor can this court grant a remedy. The defendant should go to the legislature.

*Curia, per* SAVAGE, Chief Justice. The first question is as to the competency of *Cogswell.* Courts have lately inclined strongly to the rule, that nothing but an interest in the event of a cause, shall disqualify a witness as interested. *Phillips,* in his treatise on evidence, (1 *vol.* 47,) says, when the issue does not affect any common right; but is merely on a right of common, claimed by prescription, as belonging to the estate of *A,* one who claims a prescriptive right of common in right of his own estate, may be a witness; for though *A* may have such a right of common, it does not follow that *B* has; nor would the verdict in the action of *A,* be evidence in *B's* action. And *Buller,* J. in *Walton* v. *Shelly,* (1 *T. R.* 302, 3,) says, if the issue be on a right of common, which depends on a custom pervading the whole manor, the evidence of a commoner is not admissible; because, as it depends upon a custom, the record in that action would be evidence in a

subsequent action brought by that very witness to try the same right ; therefore, there is a good reason for not receiving his testimony in such a case. But the same reason does not hold where common is claimed by prescription in right of a particular estate ; because it does not follow, if *A* has a prescriptive right of common belonging to his estate, that *B*, who has another estate in the same manor, must have the same right. Neither would the judgment for *A*, be evidence for *B* ; and yet there are cases which lay it down as a general rule, that one commoner is, in no case, a witnes for another. This dictum of Mr. Justice *Buller*, is not exactly applicable to the question upon *Cogswell's* competency. Here is no right of common in controversy ; but a claim by prescription is made by the plaintiff, of a right as belonging to him in common with the inhabitants, or rather proprietors of *Lloyd's Neck*. The witness is, therefore, interested in the question ; but not in the event of the suit. He is interested in establishing the prescription ; but this may be proved as to the plaintiff, and perhaps not as to any other proprietor of *Lloyd's Neck*, in the town of *Oysterbay*. A verdict for the plaintiff, therefore, could not be used by the witness, in a suit which he might afterwards bring, for a similar trespass upon his fishery.

I think the court below erred in rejecting this witness.

Did they err also in receiving the defendant's witnesses ? The objection to those witnesses was, that they were brought to establish a right of fishery in the inhabitants of *Huntington*, they being themselves inhabitants of that town. The rule seems to be well established, that an inhabitant of a particular place cannot be sworn to prove a prescriptive right in all the inhabitants ; because that would be swearing to give himself a right there. (1 *Ld. Raym.* 731. *Doug.* 374. 1 *East*, 357.) In the case of *Jacobson* v. *Fountain*, (2 *John.* 175,) *Thompson*, justice, who delivered the opinion of the court, lays down the rule with great precision. " A commoner," says he, " is inadmissible to prove a right of common, unless the common be claimed by prescription in right of a particular es-

iate." In that case, the witnesses were excluded, because the right of fishing was claimed by them, not in their individual capacity, but as inhabitants of *Staten Island.* The right set up by the defendants, if it existed at all, depended on residence exclusively. And hence the distinction between all the cases cited, and this case. There is here no right of common, no right of fishery in the inhabitants of *Huntington,* any more than those of any other town in the state. The right set up by the defendant is claimed by him in his individual capacity. It does not depend at all on residence. These witnesses were no more interested than any other citizens of the state, or of the *United States.* So far, then, the court below was correct in admitting them.

But were they not interested to defeat the plaintiff's action; as, by their own testimony, it appears they were liable to an action themselves, if the plaint  's right should be established ? They would then come within the case of *The Carpenters* v. *Hayward,* (*Doug.* 374,) where several persons were introduced to disprove the existence of a custom in favor of the plaintiffs, that none but the members of their company should work in *Shrewsbury,* by shewing that the witnesses had worked there as carpenters, without the company's license. Lord *Mansfield* said, " if the company had failed in establishing the custom, they would have been discharged from actions to which they were liable for the breach of it." The most forcible objection to these witnesses is, that they were interested to discharge themselves from actions to which they were liable as trespassers, if the plaintiff's right was established ; and yet the verdict against the defendant could not be used in an action against the witnesses. The general rule is, that a verdict cannot be evidence for either party, in an action against one who was a stranger to it ; who had no opportunity to examine witnesses, or to defend himself, or to appeal against the judgment. (1 *Phil. Ev.* 247. 14 *John.* 80, 1.) I think this case is not an exception to that rule.

The witnesses were, therefore, no otherwise interested than any other persons, in the event of the suit; and, of course, were competent.

The award, I think, was properly excluded as irrelevant. It purported merely to establish the line between *Lloyd's Neck* and *Huntington*, which, in my judgment, was immaterial.

The court below having erred in rejecting the testimony of *Cogswell*, the judgment must be reversed, and a new trial granted; unless, indeed, as it is contended for the defendant, the plaintiff, from his own shewing, cannot recover upon a further trial. It is urged by him, that the plaintiff cannot recover, because the *locus in quo* is an arm of the sea, where the tide regularly ebbs and flows; and because, in such case, the right of fishing is common to all. The law on this subject, is truly laid down by lord *Mansfield*, in *Carter* v. *Murcot*, (4 *Burr.* 2164.) "In rivers not navigable, the proprietors of the land have the right of fishery on their respective sides; and it generally extends *ad filum medium aquæ*. But in navigable rivers, the proprietors of the land on each side, have it not; the fishery is common; it is *prima facie* in the king, and is public. If any one claims it exclusively, he must shew a right. If he can shew a right by prescription, he may then exercise an exclusive right, though the presumption is against him, unless he can prove such a prescriptive right." This is the acknowledged law of *Great Britain*, and of this state. (3 *Caines*, 318. 2 *John.* 175. 10 *id.* 236. 17 *id.* 210. 20 *id.* 98.) So in *Connecticut*. (1 *Conn. Rep. N. S.* 384. 2 *id.* 483.)

The case of *Jacobson* v. *Fountain*, is an instance in which the plaintiff proved a prescriptive right to the fishery opposite his soil. Such a fishery may be the subject of a grant. Of course, it may be claimed by prescription.

The plaintiff is bound, in such case, to make out his right. Every presumption is against him. He must, therefore, establish his prescriptive right by satisfactory proof before he can recover.

Judgment reversed, and a *venire de novo* awarded.