RE ESTATES OF GEORGE H. BETHEL ET AL., DECEASED.

(209 Pac. 311; 226 Pac. 427.)

Courts—Order of Circuit Court When Cause Transferred from County Court was Final Judgment, Appealable to Supreme Court.

1. A final order, made in a cause or proceeding after it has been transferred under Section 939, Or. L., providing that, where proceedings are commenced in the County Court in which the county judge is a party or interested, they may be certified to the Circuit Court where actions at law shall be proceeded with as on appeal from the County to the Circuit Court, and, if the matter be in probate, then all original papers and proceedings shall be

certified to the Circuit Court, is the judgment or decree of the Circuit Court, and any party may appeal therefrom to the Supreme Court.

## ON THE MERITS.

**Executors and Administrators — Approval of Administrator's Accounts Held Supported by Evidence.**

2. Approval of an administrator's accounts and allowance of compensation for services *held* proper under the evidence; Section 1241, Or. L., not applying.

**Executors and Administrators—Claims not Properly Chargeable Against Estate Held Chargeable Against Distributive Shares.**

3. Where claims of an administrator for money advanced by him to pay heirs' bills for clothing, schooling and for sickness of one of them were not properly chargeable against the estate, the court on the final hearing confirming the administrator's reports properly directed the taking of further testimony upon that feature of the issues to determine what should be charged against each distributive share of the estate.

**Executors and Administrators—Administrator not Bound to Close Estate, When to Do so Involves Its Sacrifice.**

4. While an administrator should close estate as soon as practicable, the law does not contemplate that he should sacrifice the interests of estate in order to bring it to a close.

**Limitation of Actions—Administrator's Claim for Services as Manager of Farm, More Than Ten Years Prior to Appointment as Administrator, Held not Barred.**

5. Administrator's claim for services rendered on farm as manager thereof, for more than ten years prior to his appointment as administrator, *held* not barred by limitation.

From Coos: JOHN S. COKE, Judge.

In Banc.

*Mr. C. R. Wade,* for the motion.

*Mr. C. F. McKnight* and *Mr. John F. Hall, contra.*

McCOURT, J.—On motion to dismiss appeals. Prior to June 3, 1919, separate proceedings had been

3. Heir's distributive share in realty as chargeable with his indebtedness to estate, see notes in 7 Ann. Cas. 563; Ann. Cas. 1916D, 1294.

5. Application of general statutes of limitation to proceedings for administration of decedents' estates, see note in 2 Ann. Cas. 773.

commenced, and were at that date pending, in the County Court of Coos County, for the administration of the estates of George H. Bethel and Elizabeth Bethel, deceased. At and prior to the death of the former, the decedents were husband and wife. Ralph R. Pomeroy, the respondent herein, was the qualified and acting administrator of each of said estates.

On the latter date C. R. Wade, who was then, and for some time had been, acting as attorney for Pomeroy as such administrator, was elected county judge of Coos County, and on June 9, 1919, qualified and assumed the duties of his office.

Thereafter on account of the direct interest of the county judge in the administration proceedings mentioned, an order was made by the County Court transferring the same from the County Court to the Circuit Court for Coos County, and thereupon the proceedings were duly certified to the Circuit Court in and for Coos County, as authorized by Section 939, Or. L.

After the proceedings were so certified to the Circuit Court, the controversies attempted to be brought here by appeal, were heard and determined by that court. The heirs of the decedents, appellants here, filed formal objections to the final account of the administrator. The latter filed a claim against the estate for personal services and also a claim as administrator. To both of such claims the heirs objected in writing. The parties stipulated in writing that the objections to the final account and the disputes arising upon the pecuniary claims of Pomeroy against the estates might be consolidated for the purposes of a trial and be heard together.

A trial was had before the court without a jury, and upon consideration of the evidence, the court gave

and entered two separate orders, one settling and approving the final account of the administrator, and the other awarding judgment in favor of Pomeroy against the estates for the greater part of his claims. An appeal was prosecuted from each order.

The respondent Pomeroy moves to dismiss both appeals upon the ground that this court is without jurisdiction to entertain the same. Respondent contends that the Circuit Court, in hearing and determining the litigated matters above described, was performing the functions of a county judge, and was not exercising the jurisdiction and authority of a Circuit Court, and that therefore the right of appeal, if any, possessed by appellants, should have been prosecuted from the County Court to the Circuit Court, and not from the Circuit Court to this court.

The county judge being directly interested in the proceedings in question, the transfer of the same from the County Court to the Circuit Court was authorized by Section 939, Or. L., in the following terms:

"Any proceedings commenced in the county court, whether actions at law or proceedings in probate, in which the county judge is a party or directly interested, may be certified to the circuit court, in and for the county in which the proceedings may be pending, where the action at law shall be proceeded with as upon appeal from the county to the circuit court; if the matter be a matter in probate, then all the original papers and proceedings had shall be certified to the circuit court, and the judge of said court shall proceed in the manner now prescribed for the county judge, had the same remained in said court; * * "

The transfer authorized by the statute was complete upon certification of the proceedings to the Circuit Court, pursuant to the order of the county judge,

ordering and directing such transfer. Thereupon the jurisdiction of the Circuit Court attached. The statute clearly defines the extent of that jurisdiction and the manner of its exercise.

It is at once apparent that the statute contemplates and provides that upon removal of the proceedings to the Circuit Court, the latter court shall be vested with full jurisdiction in respect thereto, and that the control and jurisdiction of the County Court over such proceedings shall cease and terminate. This result comports with the prevailing rule upon removal of a cause from one court to another: 15 C. J. 1150.

1. A final order made in a cause or proceeding after it has been transferred under the authority of that portion of Section 939, Or. L., above set forth, is the judgment or decree of the Circuit Court, and any party to such a judgment or decree may appeal therefrom to this court.

It follows that the motion to dismiss the appeals should be overruled, and it is so ordered.

MOTION TO DISMISS APPEALS OVERRULED.

---

ON THE MERITS.

George H. Bethel was committed to the Oregon State Hospital for the Insane in 1905, where he remained an inmate until his death. He died intestate on June 13, 1916, leaving surviving him as next of kin and heirs at law, Elizabeth Bethel, widow; Anne Bethel, daughter, age 17 years; Helen Bethel, daughter, age 15 years, and Carlton Bethel, son, age 11 years, all of whom were residing on a dairy farm in Coos County, Oregon.

On February 10, 1917, Elizabeth Bethel, widow, filed a petition for letters of administration and thereafter was duly appointed as administratrix of the estate of George H. Bethel, deceased. She filed no inventory of the estate, neither did she make to the court any report of her doings as such administratrix.

On July 7, 1918, Elizabeth Bethel died intestate, leaving as her next of kin and heirs at law the three children above named.

On July 17, 1918, Ralph R. Pomeroy petitioned for letters of administration *de bonis non* of the estate of George H. Bethel, and for letters of administration of the estate of Elizabeth Bethel, deceased. Anne Bethel, the only child not then a minor, joined in the petitions. Letters having been granted to him, Pomeroy qualified as administrator of both estates and entered upon the discharge of his duties.

Thereafter, objections were filed to the administrator's reports.

On June 9, 1919, the attorney for the administrator qualified as county judge of Coos County, and by reason thereof was disqualified to determine the issue. Thereupon, the matter was certified to the Circuit Court, and, purusuant to written stipulation and order of the court made thereon, all matters pertaining to each of the estates were consolidated and hearing was had thereon at one and the same time.

After hearing the issue made by the objections filed to the administrator's reports, which included his report of the sale at public auction, on May 7, 1921, of personal property of the estate, the court found:

"That all the reports of the administrator and the accountant's reports cover all matters pertaining to the estate up to and including the 12th day of January, 1921.

"That the management of the estate has in many respects been irregular and unauthorized for want of previous court order, but that such acts are, at most, only voidable, and not void.

"That the estate has been administered upon by the administrator in good faith, and that the effects, moneys, and credits have been carefully and scrupulously kept and accounted for.

"That the administrator has taken good care of the property and has exercised good judgment in the management of the estate, and that the estate has not suffered by his acts, but on the contrary has increased in value; and the estate has profited thereby.

"The court finds that the administrator's reports are substantially correct, varying only in a few minor particulars from the accountant's report. That the accounts are complete, except, however, as to the matter of credits or charges to be made to the several heirs in the matter of distribution, and the court finds that all of the objections are without justification and ought to be disallowed.

"The court also finds that the sale of personal property appears in all respects to be properly held pursuant to an order made and filed herein, and that no objections have been made thereto."

The court further found that the reports should be approved, in so far as they corresponded with the report of the expert accountant.

Predicated upon its findings of fact and conclusions of law, the court decreed that the accounts of Ralph R. Pomeroy, as administrator, in the care, management and disposition of the Bethel estates, be approved, ratified and confirmed. The decree further provided that if the distribution of the estate among the several heirs should not be settled by stipulation of respective counsel, additional testimony be taken for further adjustment.

Judgment was entered in favor of the administrator, and the court ordered:

"That the claimant, Ralph Pomeroy, do have and recover of and from said estate for services rendered to said estate, both ordinary and extraordinary, and for services both prior and subsequent to his appointment as administrator, * * to wit: * * ordinary statutory fee, $646.09; extraordinary fee for services rendered during administratorship, and also in full of all claim for services prior to administratorship * * , $6,853.91; total sum, * * $7,500. * * It is the order of the court hereby made that Ralph Pomeroy do have and recover of and from said estate, and have allowed, and his claim is hereby approved, to the extent of $7,500, the same to be in full payment of all services rendered by him, and of all claims made by him against said estate, and either or both of them, and it is the order of the court hereby made that said claim be paid from and out of the assets of the estate."

On appeal to this court, numerous errors are assigned.                                                  Affirmed.

For appellants there was a brief over the names of *Mr. Charles F. McKnight* and *Mr. John F. Hall,* with an oral argument by *Mr. McKnight.*

For respondent there was a brief and oral argument by *Mr. C. R. Wade.*

BROWN, J.—2. The objectors invoke the provisions of the following statute:

"If any executor or administrator shall refuse to allow any claim or demand against the deceased, after the same may have been exhibited to him in accordance with the provisions of this act, said claimant may present his claim to the county court for allowance * * . The court shall have power to hear and determine in a summary manner all demands against any estate agreeably to the provisions of this act, and which have been so rejected by the executor or administrator * * ; provided, that no claim which shall

have been rejected by the executor or administrator, as aforesaid, shall be allowed by any court, referee, or jury, except upon some competent or satisfactory evidence other than the testimony of the claimant." Or. L., § 1241.

This statute has been applied by this court many times: *Quinn* v. *Gross,* 24 Or. 147 (33 Pac. 535); *Harding* v. *Grim,* 25 Or. 506 (36 Pac. 634); *Bull* v. *Payne,* 47 Or. 580 (84 Pac. 697); *Tharp* v. *Jackson,* 85 Or. 78 (165 Pac. 585, 1173); *Godfrey* v. *Howes,* 91 Or. 98 (178 Pac. 388); *Re Estate of Banzer,* 106 Or. 654 (213 Pac. 406); *Franklin* v. *Northrup,* 107 Or. 537 (215 Pac. 494); *Uhler* v. *Harbaugh* (Or.), 224 Pac. 89. However, the foregoing decisions, because they relate to proof of claims that were rejected by the executor or administrator, as provided in the statute quoted above, do not apply to this· case. Pomeroy's claims have never been rejected.

The questions of law arising upon this appeal are well settled in our jurisdiction. For the reason that the real questions in this cause relate to facts, we have devoted much time to a careful reading of the record before us.

The estates consist of a dairy farm, together with milch cows and young stock. Objections arise from the fact that the administrator continued to conduct the dairy instead of immediately bringing the administration to a close. The claims objected to, other than Pomeroy's unpaid claim for wages, were paid from proceeds realized, in a great measure, from the sale of milk and cream produced by the dairy as carried on by him, as administrator. No real property was sold, and the inventoried list of stock was kept complete.

3. The heirs object, among other things, to a claim on account of moneys advanced by the administrator

to pay their own bills for clothing, school, and a bill incurred during illness of one of the heirs. While, under the record, these claims are not properly chargeable against the estate, the court below rightfully held that further testimony should be taken upon that feature of the issues in order to determine what should be charged against each distributive share of the estate. See notes, Ann. Cas. 1917A, pp. 135, 136.

The administrator is an unmarried man. When he took charge of the estate in his official capacity he employed his married brother as a farm hand. This brother's wife, who is a sister of Elizabeth Bethel, deceased, did the cooking and housekeeping on the farm. Later, another brother married Helen Bethel, one of the three heirs, and she is one of the two objectors. Anne Bethel, the original objector, did not appeal.

Pursuant to stipulation of the attorneys of the interested parties and the order of the court, W. H. Wann, a certified public accountant, audited the records and accounts of Ralph R. Pomeroy, administrator of the estates of George H. Bethel and Elizabeth Bethel, deceased, for the period extending from July 19, 1918, to January 12, 1921, being the time covered by the administrator's first, second, third, final, and supplemental final reports. The report and evidence of the accountant is too lengthy to print. He states in his report, among other things:

"The records were found to be in fair condition. On account of heavy disbursements I spent some time analyzing same for irregularity * * So far as can be determined, the funds have been scrupulously accounted for, and I have checked from the bank records, bills and statements, as well as to use any outside information obtainable * * .

"Taking up the matter of losses or gains during the administratorship, I have made a fairly accurate showing of the results.

"Revenue, * * $14,050.44."

This revenue is made up of cream and milk to the amount of $10,354.52, cattle, hogs and produce, $2,836.02, and a number of other items.

The expenditures total $9,481.58, leaving a profit of $4,568.86.

4. It is the duty of an administrator to close up the affairs of an estate as soon as practicable; but the law does not contemplate that he should sacrifice the interests of the estate in order to bring it to a close.

The administrator avers in his report—and is sustained by the record—that the affairs of the estate have been administered faithfully, honestly, and with ability. He states that in July, 1918, during the World War, when he commenced the administration, the property of the estate could not have been sold except at great sacrifice; that the appraised value of the estate at that time was little more than $14,000, a fair and reasonable appraisement, and he is well supported by the record in stating that the present value thereof is at least $25,000. He was appointed administrator of the estates during harvest time and in the midst of the dairy season. The resources and revenues of the estates had been mingled. There were 49 cows in milk, about 40 of which belonged to Elizabeth Bethel's estate. There was upon the dairy farm, when Elizabeth Bethel died, an uncompleted barn in course of construction, upon which had been expended the sum of $2,000. This was completed by the administrator. At the solicitation of the heirs, he purchased, for the sum of $800, from the funds

that came into his hands, a tombstone to mark the last resting place of the decedents. The receipts of the concern show that he purchased for the estate a Ford truck which was required for conveying milk and cream to market. He cleared and seeded seven acres of valuable land belonging to the estate. He employed help and maintained the household from the revenue produced by his efforts. He paid the taxes upon the property of the estate with money derived from the same source.

The court did not err in approving the administrator's accounts.

5. The administrator is an expert butter maker, and from March 1, 1908, was employed to take charge of the Bethel farm, including its herd of cattle consisting of about 49 cows and some young stock. It was his duty to manage the farm, milk the cows, care for the stock and make the butter, at the agreed price of $50 per month. He worked continuously at that wage for six years. He testifies that from March 1, 1914, until his appointment as administrator he was to receive a wage of $60 per month. Of the amount due him for labor, he has received payment in the sum of $923. He further testifies that after his appointment as administrator he continued to labor on the dairy farm, as before, and that in all these years of service he was never absent from the farm a single night except on official business.

The objectors do not question the fact of the many years' valuable service rendered by Pomeroy to the Bethels. They do not deny that he toiled early and late, and for many hours every day, year after year, and for the period of time stated. They do assert, in effect, that while Pomeroy was toiling for the wel-

fare of the estates, the statute of limitations was running against his claim for just compensation.

The statute of limitations cannot avail the heirs. Pomeroy's claim is not barred by any law.

The claims for wages for more than 10 years prior to Pomeroy's appointment as administrator, and for his extraordinary services rendered while acting in that capacity, together with the proofs offered in support thereof, have been subjected to the most careful scrutiny; and we are convinced that he is entitled to the full amount awarded him by the trial court for wages and commissions.

The court below saw the witnesses, heard them testify, noted their appearance and demeanor upon the witness-stand, and was familiar with the entire situation. Under the peculiar circumstances existing in the instant case, the findings of the learned trial judge are entitled to weight.

We conclude that this case should be affirmed. It is so ordered. AFFIRMED.

McBRIDE, C. J., and BEAN and McCOURT, JJ., concur.