Argued and submitted May 6, at Pendleton, Oregon, affirmed August 3, 1988

In re Estate of
Alma A. Griffith, Deceased.

KOHLER,
*Respondent,*

*v.*

ARMSTRONG,
*Appellant.*

(87-02-31016; CA A44974)

758 P2d 407

Wade P. Bettis, Jr., La Grande, argued the cause and filed the brief for appellant.

Carl G. Helm, La Grande, argued the cause for respondent. With him on the brief was Helm, Baum & Riedlinger, La Grande.

Before Warden, Presiding Judge, and Graber, Judge, and Riggs, Judge pro tempore.

GRABER, J.

## GRABER, J.

■ Defendant is the personal representative of the estate of Alma A. Griffith; plaintiff is Griffith's niece. Plaintiff, who has worked extensively in home health care and has significant experience in nursing, cared for Griffith during the last ten months of her life. Plaintiff seeks to recover on Griffith's alleged promise to pay the reasonable value of her services. The trial court found in plaintiff's favor, and defendant appeals.[1] We affirm.

Plaintiff testified that she stopped in LaGrande to visit Griffith in January, 1986, while she was between jobs. Griffith had reared plaintiff for several years when plaintiff was a child, and plaintiff called her "Mom." At the time of plaintiff's visit, Griffith was 81 years old and was concerned about her ability to continue to care for herself. She asked plaintiff to stay with her. Plaintiff agreed. In March, when plaintiff was out of money and had an offer of other employment, she told Griffith that she would have to leave. Griffith did not want her to do so and promised that, if she would stay, Griffith would pay her from a veteran's pension when Griffith received it.[2] Plaintiff remained and cared for Griffith until she died in October, 1986.

■ Plaintiff's testimony, if believed, is sufficient to support the trial court's judgment. Defendant's argument on appeal is that plaintiff did not corroborate her testimony with independent evidence, as ORS 115.195 requires:

> "A claim that has been disallowed by the personal representative may not be allowed by any court except upon some competent, satisfactory evidence other than the testimony of the claimant."

The statute requires that there be independent evidence sufficient to go to the trier of fact on the denied claim. Evidence that merely corroborates some details but does not in itself

---

[1] An action against a personal representative on a denied claim is an action at law. Our review, therefore, is not *de novo. Cronn v. Fisher,* 245 Or 407, 415-416, 422 P2d 276 (1966).

[2] Griffith's husband was a veteran of World War I. Griffith was entitled to a widow's pension but for some reason had never received it. Plaintiff helped her to complete the application process, but the pension check did not arrive until after Griffith's death.

constitute a *prima facie* case is insufficient. *Lawrence v. Ladd,*
280 Or 181, 570 P2d 638 (1977).

In this case, the strongest evidence for plaintiff is her
own testimony. However, her daughters provided additional
evidence. One daughter, Carrie Jo Black, testified about the
work her mother did for Griffith.[3] About a week before
Griffith's death in October, Black and Griffith argued about
getting plaintiff some relief from the constant burden that
Griffith's deteriorating condition imposed. Griffith at first
opposed a substitute caregiver and said, according to Black,
"Mom would be getting paid for this." Earlier, in May or June,
Griffith talked with Gail Lynn Hatch, another of plaintiff's
daughters. Hatch testified:

> "We were, like I said, visiting. [Griffith] told me how much
> she appreciated that my mother was there. And she realized
> that my mother could leave her and go to Seattle or come to
> Joseph and get a job where she would be paid. She said to me,
> 'But, that's okay, honey. She'll be paid. She'll get her money.
> She will be paid.' "

Defendant insists that the daughters' testimony is
inadequate. Defendant points to the presumption that serv-
ices rendered to a close relative are gratuitous, *Lawrence v.
Ladd, supra,* 280 Or at 194; *Franklin v. Northrup,* 107 Or 537,
215 P 494 (1923), and to cases holding similar statements to be
inadequate. *See, e.g., Lawrence v. Ladd, supra; LaTrace v. Est.
of LaTrace,* 55 Or App 1005, 640 P2d 703 (1982). Every case,
however, depends on its particular facts. In both *Lawrence* and
*LaTrace,* for instance, the plaintiffs had lived with the dece-
dents in long-term non-marital relationships, taking on the
traditional responsibilities of a housewife long before the
decedent became ill. In *Lawrence,* the decedent's statements
looked toward a future will in which he would leave the plain-
tiff his property because of the entire relationship, not as
payment for services rendered. In *LaTrace,* the decedent's
statement that the plaintiff would be paid for her services may
well have referred to her remainder interest in the house in
which the decedent had a life estate; the plaintiff had received

---

[3] Several other witnesses also testified about plaintiff's work. Defendant does not
dispute that there was sufficient independent evidence of the care that plaintiff gave
Griffith.

that interest some years before, when she and the decedent were divorced.

In contrast to those cases, and to others that defendant cites, the circumstances here do not show a long-term caregiving relationship or a gratuitous caregiver. Plaintiff's usual occupation was in-home care, and she was normally paid for her services. She had not lived with Griffith for some years before moving in with her in January, 1986. Although the relationship between plaintiff and Griffith gives rise to the presumption that the services were rendered gratuitously, she overcame the presumption.[4]

The court could find from what Griffith told plaintiff's daughters that Griffith recognized her obligation to pay plaintiff for her services. When Griffith told Black that plaintiff would be paid, she was resisting Black's suggestion that she get additional help. One reasonable interpretation of her statement is that Griffith believed that, because plaintiff was earning money by her work, she should not complain about the burdens imposed. Even more significant is Griffith's statement to Hatch several months earlier. Griffith told Hatch that plaintiff would be paid, immediately after commenting that plaintiff was giving up other job opportunities by caring for her. One obvious inference is that Griffith knew that she was obligated to pay plaintiff in lieu of the opportunities plaintiff had foregone.

■    From the testimony of plaintiff's daughters, the court could find both that plaintiff performed services for Griffith and that Griffith had promised to pay plaintiff for them. That is sufficient to constitute a *prima facie* case in *quantum meruit.*[5] Because there is a *prima facie* case without plaintiff's testimony, there necessarily is one with her testimony. The court found in plaintiff's favor, and that finding is both corroborated and supported by substantial evidence in the record.

Affirmed.

---

[4] The court awarded plaintiff the value of her services from March, not January, on the ground that it was her conversation with Griffith in March that created the promise to pay.

[5] Plaintiff need not corroborate her testimony concerning the reasonable value of her services. *Johnson v. Ranes,* 67 Or App 667, 672, 680 P2d 688 (1984).